IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 3:13-cr-1 |
| | ) | |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| MAURICE L. LINDSAY, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Maurice L. Lindsay's ("Lindsay" or "Defendant") Motion for Compassionate Release (ECF No. 53). Lindsay's Motion is fully briefed (ECF Nos. 53, 54, 65) and ripe for disposition. For the reasons that follow, the Court **DENIES** Lindsay's Motion for Compassionate Release **WITHOUT PREJUDICE**.

I.  Background

On April 23, 2013, Lindsay pleaded guilty to Count One of the Indictment charging him with distribution of less than 100 grams of heroin, a Schedule I controlled substance. (ECF No. 27). At the time of his sentencing, Lindsay qualified as a Career Offender with an applicable guideline range of 151-181 months' imprisonment. (ECF No. 30). Notwithstanding the applicable guideline range, this Court granted Lindsay a 30-month downward variance at the time of his sentencing—sentencing Lindsay to serve a term of imprisonment of 121 months. (ECF No. 39). Lindsay is currently serving his 121 month sentence at Butner Medium I FCI, with an anticipated release date of July 27, 2022. (ECF No. 54 at 4).

On August 9, 2021, Lindsay filed his Motion for Compassionate Release. (ECF No. 53). In his Motion, Lindsay requests compassionate release because (1) there are extraordinary and

compelling reasons warranting a reduction in his sentence, namely his poor and deteriorating health, and subsequent variants of the COVID-19 virus, (2) a reduction in his sentence would be consistent with the policy statements of the Sentencing Commission, and (3) many of the 18 U.S.C. 3553(a) ("Section 3553(a)") factors now favor a reduction in Lindsay's sentence. (*Id.* at 2). Accordingly, Lindsay argues that the remaining 12 months of his incarceration should be converted to home confinement with electronic monitoring, with permission for work, worship, and treatment. (*Id.*).

The Government filed a Response to Lindsay's Motion for Compassionate Release on August 27, 2021. (ECF No. 54). In its Response, the Government argues that Lindsay's Motion should be denied because (1) Lindsay has been vaccinated against the COVID-19 virus and there is low community transmission of COVID-19 in the Bureau of Prisons ("BOP") facility in which he resides, (2) Lindsay does not present any extraordinary and compelling reasons to permit compassionate release, and (3) the Section 3553(a) factors do not weigh in favor of granting Lindsay's motion. (*Id.* at 1).

On November 30, 2021, Lindsay filed a Reply to the Government's response reasserting the initial positions of his Motion for Compassionate Release. (ECF No. 65). Further, Lindsay argued that he would be safer at home than in BOP custody because (1) BOP is not adequately managing the COVID-19 Pandemic, (2) BOP's reported COVID-19 numbers are misleading, and (3) Lindsay now has viable release plan which includes residing in an apartment owned by his family which has already been approved by United States Probation Office. (*Id.* at 7-12).

II.     **Legal Standard**

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). A court may only alter a sentence pursuant to statutory authorization. *United States v. Washington*, 549 F.3d 905, 917 (3d Cir. 2008). Congress provided such statutory authorization by amending 18 U.S.C. § 3582(c) to permit, in certain circumstances, an incarcerated person to petition the court for a modification to his or her term of imprisonment. First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239. Although the First Step Act added a procedure for prisoner-initiated motions, the rest of the compassionate-release framework remained unchanged. *United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021). A prisoner's motion for compassionate release may be granted if a court finds that: (1) the prisoner has exhausted his/her administrative remedies, (2) sentence reduction is warranted by extraordinary and compelling reasons; (3) sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (4) sentencing reduction is supported by the traditional sentencing factors under Section 3553(a), to the extent they are applicable. *Id.* (citing 18 U.S.C. § 3582(c)(1)(A)).

III.    **Discussion**

In order for the Court to grant Lindsay's Motion for Compassionate Release under 18 U.S.C. § 3582(c), the Court must analyze whether: (1) Lindsay has exhausted his administrative remedies, (2) Lindsay has demonstrated "extraordinary and compelling reasons" that warrant a reduction in sentence (3) Lindsay has demonstrated that a sentence reduction is consistent with applicable policy statements issued by the United States Sentencing Commission, and (4) Lindsay's sentencing reduction is supported by the traditional sentencing factors found under Section 3553(a), to the extent they are applicable.

### a. Lindsay Has Exhausted His Administrative Remedies Under § 3582(c)(1)(A)

A defendant may file a motion seeking modification of an imposed term of imprisonment under § 3582(c)(1)(A) only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) (per curiam). The Third Circuit Court of Appeals has mandated "strict compliance" with this exhaustion requirement. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Court must independently determine whether the exhaustion requirement is satisfied. *Id.* at 597; *United States v. Iezzi*, 2020 WL 4726582, at *4 (W.D. Pa. Aug. 14, 2020). "[A] defendant seeking compassionate release must satisfy his or her burden to show that he or she exhausted remedies within the [Bureau of Prisons] before he or she filed the motion for compassionate release with the district court." *United States v. Jeffries*, 2021 WL 2000555, at *5 (W.D. Pa. May 19, 2021) (collecting cases).

On March 30, 2020, Lindsay submitted a Request for Compassionate Release to the BOP. (ECF Nos. 53 at 3; 53-2). The BOP denied his Request on April 10, 2020. (ECF No. 53-2). Lindsay filed a timely appeal, which was denied on January 22, 2021. (*Id.*). Given the foregoing, the Court finds that Lindsay has met his burden and demonstrated that he has exhausted his administrative remedies as required under Section 3582(c)(1)(A).

### b. Lindsay Has Not Demonstrated "Extraordinary and Compelling Reasons" to Warrant a Reduction to His Sentence

#### i. The Parties' Arguments

-4-

Lindsay argues that his pre-existing medical conditions, the spread of COVID-19, conditions within Butner Medium I FCI, and the fact that he has served more than 86% of his sentence constitute "extraordinary and compelling reasons" for the Court to grant his motion for compassionate release. (ECF No. 53 at 4-9). As far as his medical conditions are concerned, Lindsay asserts that he:

> [S]uffers from a constellation of serious health conditions [that include]: (i) severe persistent asthma which substantially impairs his respiration; (ii) Type 2 diabetes mellitus; (iii) sleep apnea; (iv) obesity; (v) gastroesophageal reflux disease with esophagitis; (vi) failing vision, which has required a cornea transplant; (vi) high cholesterol; and (vii) a history of substance use disorders."

(Id. at 6-7). Lindsay also alleges that "the simple fact that he is African-American also puts him [at] a greater risk from COVID-19. (Id. at 7). Moreover, Lindsay contends that he is at serious risk of COVID-19 infection because the BOP has failed to generally control the virus within Butner Medium I FCI and he is unable to control his own physical distancing, self-isolation, and the conduct of others in an effort to prevent himself from catching the virus. (Id.). Taken together, Lindsay argues that his pre-existing conditions, his high risk of catching COVID-19, and his inability to take individual precautions to protect himself against the virus all constitute extraordinary and compelling reasons for the Court to grant his motion. (Id.).

In response, the Government does not contest that Lindsay experiences the pre-existing conditions he alleges. (ECF No. 54 at 5). However, the Government does argue that the BOP has adequately controlled the spread of COVID-19 in BOP facilities. (Id. at 6). Indeed, the Government argues that the BOP has taken significant steps to reduce the spread of COVID-19 through creating COVID-19 action plans which call for inmate and staff masking, quarantining, and social distancing within BOP facilities. (Id.). Further, the Government argues that the BOP

has also released non-violent inmates who have served a majority of their sentences to home confinement, reduced the number of new arrivals, and taken other quarantine and safety measures to keep inmates safe. (*Id.* at 5-8). Moreover, the Government argues that the BOP has undertaken a significant effort to vaccinate inmates—including Lindsay who received both doses of the Pfizer vaccine in April 2021. (*Id.*). Given the foregoing, the Government argues that Lindsay has not demonstrated "extraordinary and compelling reasons" that would justify compassionate release. (*Id.*).

### ii. Legal Standard: "Extraordinary and Compelling Reasons"

"Congress did not define 'extraordinary and compelling reasons' except to provide 'rehabilitation ... alone' does not suffice." *United States v. Brooks*, 2022 WL 1173196, at *4 (W.D. Pa. Apr. 20, 2022) (quoting *United States v. Adeyemi*, 470 F. Supp. 3d 489, 499 (E.D. Pa. 2020)); *see also* 28 U.S.C. § 994(t). Rather, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States Sentencing Commission. *See* 28 U.S.C. § 994(t) (providing that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). The United States Sentencing Commission has defined "extraordinary and compelling reasons" to include four categories of reasons: (i) the medical condition of the defendant; (ii) the age of the defendant; (iii) the family circumstances of the defendant; and (iv) "Other Reasons—[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the [other three reasons]." U.S.S.G. § 1B1.13 cmt. n.1. As a result of the First

Step Act, many courts have concluded that the "catch-all" category applies to both the BOP Director and the courts. *United States v. Sabot*, 2020 WL 6274983, at *2 (W.D. Pa. Oct. 26, 2020).

The Third Circuit has held that district courts are not strictly bound by the policy set forth in the sentencing guidelines. A*ndrews*, 12 F.4th at 259. However, the Third Circuit has also indicated that a district court does not err when consulting the "text, dictionary definitions, and the policy statement to form a working definition of 'extraordinary and compelling reasons.'" *Id.* Indeed, the Third Circuit has found that the "policy statement's descriptions of extraordinary and compelling circumstances can 'guide discretion [of the district court] without being conclusive.'" *Id.* (quoting *United States v. Gunn* 980 F.3d 1178, 1180 (7th Cir. 2020)).

Additionally, in considering the impact of the COVID-19 Pandemic on the "extraordinary and compelling reasons" offered by a prisoner for compassionate release, "the mere 'existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner[.]'" *United States v. Somerville*, 463 F. Supp. 3d 585, 596 (3d Cir. 2020) (quoting *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020)). Rather, a prisoner "must at least show: (1) a sufficiently serious medical condition, or advanced age placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." *Id.* at 597.

More recently, however, in light of the proliferation and availability of the COVID-19 vaccine, "even if an inmate has serious underlying medical conditions and faces a non-speculative risk of exposure to the COVID-19 virus, the vaccine may prevent that inmate from contracting the virus or significantly reduce that inmate's risk of infection or reinfection." *Brooks*, 2022 WL

-7-

1173196, at *5 (citing *United States v. Rhodes*, 2021 WL 4460031, at *4 (W.D. Pa. Sept. 29, 2021)). Therefore, a court must determine whether an inmate has set forth "extraordinary and compelling reasons" for compassionate release based upon his or her asserted medical conditions, the situation at the facility where the inmate is held, and whether the inmate has been offered and/or received a COVID-19 vaccination. *Id.*

Here, Lindsay bears the burden of producing sufficient evidence to show that: (1) he faces a uniquely high risk of grave illness or death if infected or re-infected by the COVID-19 virus, given his underlying medical conditions, age, and the protective effects of the vaccine; and (2) he faces a non-speculative risk of contracting or re-contracting the COVID-19 virus, considering both the risk of exposure at Butner Medium I FCI and the preventative effects of the vaccine.

### iii. Analysis

Lindsay argues he has sufficiently demonstrated that he faces a uniquely high risk of grave illness or death if he is infected/re-infected with the COVID-19 virus given his underlying medical conditions. (ECF Nos. 53 at 4-10; 65 at 1-5). In fact, Lindsay argues that his pre-existing medical conditions are so severe that he has been designated as a "Medical Care Level 3" prisoner (on a scale of 1-4), which demonstrates that he is uniquely high-risk as compared to other prisoners. (ECF No. 65 at 1-5). However, in reviewing the most recent comprehensive medical records provided by Lindsay, the medical records indicate that Lindsay's conditions have been improving. (ECF No. 68-1 at 1-7). Specifically, most of the medical conditions Lindsay cites in support of his motion for compassionate release are "well controlled," "controlled with medication," and/or "improving" with the use of medication, weight loss, or other medical equipment. (*Id.*). Moreover, now that Lindsay has received his COVID-19 vaccination, his risk of

severe illness has been substantially mitigated. Indeed, as other courts have found, "although vaccines are not one hundred percent effective, the CDC states that '[c]urrently authorized vaccines in the United States are highly effective at protecting vaccinated people against symptomatic and severe COVID-19.'" *Brooks*, 2022 WL 1173196, at *6 (quoting *United States v. Singh*, 525 F. Supp. 3d 543, 547 (M.D. Pa. 2021) (finding that vaccination mitigated the risk of COVID-19 infection to such an extent that COVID-19, in combination with defendant's underlying conditions, no longer presented an extraordinary and compelling reason to grant compassionate release)).

Here, the Court concludes that Lindsay has not met his burden to demonstrate that he faces a uniquely high risk of grave illness or death if he is infected/re-infected with COVID-19. Indeed, Lindsay has received COVID-19 vaccination, and, as a result, his risk of being infected/re-infected with COVID-19 and/or suffering sever illness if he is infected is significantly diminished. Moreover, the risks posed by Lindsay's underlying medical conditions no longer present an extraordinary and compelling reason to justify compassionate release given the efficacy of the COVID-19 vaccination Lindsay has received. Therefore, the Court finds that Lindsay has failed to meet his burden to show extraordinary reasons for compassionate release due to COVID-19.

Next, the Court addresses Lindsay's argument that he faces a non-speculative risk of contracting/re-contracting the COVID-19 virus at Butner Medium I FCI. In his brief, Lindsay argues that Butner Medium I FCI has a COVID-19 infection rate of 19%, which is twice the rate of infection of the general population, and a rate of death of 6.5% of inmates infected with COVID-19, which equates approximately four times the rate of death in the general population. (ECF No. 53 at 7). In response, the Government argues that of the 734 inmates housed at Butner Medium I

FCI, only one inmate is reported as testing positive for COVID-19 and that the COVID-positive inmate has been isolated while he is treated and recovers. (ECF No. 54 at8). According to the Government, this establishes the infection rate at Butner Medium I FCI as approximately 0.13% of the inmate population. (*Id.*). Lindsay responds that this Court should not put its confidence in the number of COVID-19 infections reported by the BOP because there have been instances of undercounting COVID-19 infections in BOP facilities, and, in some cases, some BOP facilities have ceased testing inmates altogether— even if the inmate appears symptomatic. (ECF No. 65 at 9-10).

Here, the Court finds no reason to distrust the testing and infection rates reported by Butner Medium I FCI. Indeed, as cited by Lindsay in his brief, Butner Medium I FCI continues to test inmates and to quarantine any inmate who tests positive for COVID-19. (*Id.* at 11). Moreover, although the risk of exposure to COVID-19 is not completely eradicated with vaccination, isolation, social-distancing, and quarantining as implemented by Butner Medium I FCI, vaccination of all or substantially all of the inmates and staff within Butner Medium I FCI has/will limit the spread of the virus and reduce the overall risk of exposure. Further, even if Lindsay were to be exposed to COVID-19, he would be far less likely to be infected/re-infected and/or experience serious health risks as a result of his vaccination.

Given the foregoing, the Court finds that Lindsay has not met his burden to establish that he is at uniquely high risk of being infected with COVID-19 or experiencing serious illness or death as a result of an infection. Therefore, the Court finds that Lindsay has not shown an "extraordinary and compelling reason" for compassionate release at this time.

    c. **Section 3553(a) Factors Counsel Against Compassionate Release**

### i. The Parties' Arguments

Lindsay argues that the pertinent Section 3553(a) factors favor his compassionate release because (1) Lindsay has strong familial ties, (2) the offense he committed was a nonviolent offense, (3) the lengthy period of incarceration imposed, the substantial time he has already served, and the term of supervised release promote respect for the law, provide just punishment, deter criminal conduct and protect the public, and (4) the medical treatment Lindsay requires is available in the community outside of Butner Medium I FCI. (ECF No. 53 at 10-12).

In response, the Government argues that the pertinent Section 3353(a) factors counsel strongly against compassionate relief. (ECF No. 54 at 22). Specifically, the Government argues that Lindsay continues to present a danger to the community. (*Id.* at 23). Moreover, although the offense for which Lindsay was convicted and sentenced involved less than a half-gram of heroin, the Government argues that that conviction was one of many convictions that Lindsay has accumulated over a lifetime of crimes which involved guns, drugs, and trespassing. (*Id.*). Therefore, the Government asks the Court to deny Lindsay's motion for compassionate release. (*Id.*).

### ii. Legal Standard

Before modifying a term of imprisonment, the Court must "consider[] the factors set forth in [18 U.S.C. § ] 3553(a) to the extent that they are applicable." *United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020). The § 3553(a) factors that are applicable to a reduction in sentence are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

>  (B) to afford adequate deterrence to criminal conduct;
>  (C) to protect the public from further crimes of the defendant; and
>  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(1)-(2); *see Neal*, 2020 WL 5993290, at *4. In addition, the Court may "consider the length of the defendant's original custodial sentence, including the portions served and remaining, when weighing the § 3553(a) factors." *Ingram*, 2020 WL 6495437, at *6 (citing *Pawlowski*, 967 F.3d at 330–31). "[I]n considering the section 3553(a) factors, [the Court] should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence." *United States v. Walls*, No. 2:16-CR-00249, 2020 WL 6390597, at *11 (quoting *United States v. Bess*, 455 F. Supp. 3d 53, 66 (W.D.N.Y. Apr. 22, 2020)).

Moreover, a modification to a term of imprisonment must also be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). As noted earlier, the applicable policy statements require courts to assess whether the defendant is a "danger to the safety of any other person or to the community, as provided by 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13; *see Neal*, 2020 WL 5993290, at *4. The "danger to the community" policy is similar to the § 3553(a)(2)(C) sentencing factor, which indicates that a sentence needs to "protect the public from further crimes of the defendant." *United States v. Hopson*, No. 03-CR-151, 2020 WL 6156295, at *8 (W.D. Pa. Oct. 21, 2020).

  iii. Analysis

Even assuming Lindsay had satisfied his burden in establishing the existence of extraordinary and compelling reasons, after weighing the section 3553(a) factors, the Court finds

that a reduction in sentence is not appropriate.[1] The offense conduct involved Lindsay completing a controlled purchase of 13 stamp bags of heroin to a confidential informant in exchange for $240. (ECF No. 30 at 5). All told, the total weight of the transaction was found to be 0.39 grams. (*Id.*). These actions were serious and caused significant harm to the community.

Indeed, upon reexamining the Section 3553(a) factors, the Court finds that a term of imprisonment of 121 months is still warranted. As previously stated, at Lindsay's sentencing the Court determined that the applicable guideline range of 151 to 188 months was inconsistent with the applicable Section 3553(a) factors. In imposing a term of imprisonment of 121 months, the Court found that a downward variance of 30 months from Lindsay's applicable guideline range would be consistent with the statutory purposes of just punishment, would deter criminal conduct and protect the public from future crimes by Lindsay.

Further, Lindsay has a fairly extensive criminal history, including convictions for Firearms Not to be Carried Without a License, Possession of a Controlled Substance (crack cocaine), Possession with Intent to Deliver a Controlled Substance (crack cocaine), and Defiant Trespass. (*Id.* at 9-17). Releasing Lindsay now would not promote respect for the law, provide just punishment for his offenses, adequately deter criminal conduct, or protect the public from further crimes on Lindsay's part.

d. **Conclusion**

Lindsay has failed to satisfy his burden under § 3582(c)(1)(A) to show that an "extraordinary and compelling reason" warrants his compassionate release from imprisonment.

---

[1] With respect to the § 3553(a) factors, the Court considered the record in Lindsay's criminal case, including the Presentence Investigation Report (ECF No. 30), as well as the arguments Lindsay presented in bringing the instant motion.

Moreover, assuming Lindsay had met his burden, the Court finds that compassionate release is not appropriate after consideration of the policies and Section 3553(a) factors. Therefore, Lindsay's Motion for Compassionate Release (ECF No. 53) is denied. This denial is without prejudice in the event Lindsay's circumstances and/or the conditions of his confinement change.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 3:13-cr-1 |
| | ) | |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| MAURICE L. LINDSAY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

AND NOW, this 27th day of May, 2022, upon consideration of Defendant's Motion for Compassionate Release (ECF No. 53), it is **HEREBY ORDERED** that the Motion is **DENIED WITHOUT PREJUDICE.**

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT COURT